IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| CARLA WIGTON,<br><br>    Plaintiff,<br><br>vs.<br><br>STATE FARM MUTUAL<br>AUTOMOBILE INSURANCE<br>COMPANY,<br><br>    Defendant. | CV 20–98–M–DWM<br><br>OPINION &<br>ORDER |

  The plaintiff, Carla Wigton, seeks summary judgment on the questions of whether the defendant, State Farm, breached a duty to defend its insured in an underlying action and whether State Farm is liable for the damages she was awarded in state court. In the underlying action, Wigton alleged that the insured, David Murphy, sexually assaulted her on two occasions, harassed her on multiple occasions, and created a hostile living environment. State Farm declined to defend Murphy, and judgment was entered against him in the amount of $1,100,000.00. State Farm seeks summary judgment in its favor, asking the Court to declare that it had no duty to defend Murphy. State Farm is incorrect and therefore liable for the $1,100,000 judgment. *Tidyman's Mgmt. Servs. v. Davis*, 330 P.3d 1139, 1149 (Mont. 2014).

1

## BACKGROUND[1]

### I. The Policies

State Farm issued a Homeowners Insurance Policy ("the Homeowners Policy") and a Personal Liability Umbrella Policy ("the Umbrella Policy") to David Murphy, the defendant-insured in the underlying action. (Doc. 30 at ¶¶ 1–2.)

#### A. The Homeowners Policy

The "personal liability" section of the Homeowners Policy covers "bodily injury or property damage" "caused by an occurrence." (Doc. 20-4 at 25.) "Bodily injury" is defined to mean "physical injury, sickness, or disease to a person. This includes required care, loss of services and death resulting therefrom." (*Id.* at 11.) The definition of bodily injury specifically excludes "emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury unless it arises out of actual physical injury to some person." (*Id.*) The parties agree that the definition of "occurrence" is amended by Mandatory Endorsement FE-3485. (*See* Doc. 19 at ¶ 25; Doc. 30 at ¶ 25.) Under the Endorsement, "occurrence"

> means an accident, including exposure to conditions, which first results in: (a) bodily injury; or (b) property damage; during the policy period. All bodily injury and property damage resulting from one accident, series of related accidents or from continuous and repeated exposure to the same general conditions is considered to be one occurrence.

---

[1] All facts are undisputed unless otherwise indicated. (Docs. 19, 30, 32.)

(Doc. 20-4 at 36.) The Homeowners Policy also includes an exclusion that states coverage does not apply to:

> a. Bodily injury or property damage:
>    (1) which is either expected or intended by the insured; or
>    (2) which is the result of willful and malicious acts of the insured;
> b. bodily injury or property damage arising out of the business pursuits of any insured or the rental or holding for rental of any part of any premises by any insured.

(*Id.* at 26.)

### B. The Umbrella Policy

The Umbrella Policy states that, in the event an insured is sued "because of a loss to which this policy applies, [State Farm] will provide a defense to the insured at [State Farm's] expense by counsel of [State Farm's] choice when the basis for the suit is a loss that is not covered by any other insurance policy but is covered by this policy." (Doc. 20-5 at 10.) The Umbrella Policy defines the term "bodily injury" the same as the Homeowners Policy. (*Id.* at 5.) The term "loss" in the Umbrella Policy is similar to the term "occurrence" in the Homeowners Policy, but it is broader as it encompasses additional conduct that is not within the scope of "occurrence." In the Umbrella Policy, "loss" is defined as

> a. an accident, including accidental exposure to conditions, which first results in bodily injury or property damage during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one loss; or
> b. the commission of an offense which first results in personal injury during the policy period. A series of similar or related offenses is considered to be one loss.

3

(*Id.* at 6.) Notably, "personal injury" "means injury other than bodily injury arising out of" certain offenses. (*Id.*) These offenses include the "invasion of a person's right of private occupancy by physically entering into that person's residence. (*Id.* at 7.)

The Umbrella Policy also includes several exclusions. It states there is no coverage for any "loss arising out of alleged or actual: (a) sexual harassment; (b) sexual molestation; or (c) discrimination prohibited by law; by the insured." (*Id.* at 11.) There is also no coverage for "loss arising out of any insured's business property or business pursuits of any insured." (*Id.*) Nor is there coverage for "bodily injury or property damage which is: (a) either expected or intended by the insured; or (b) the result of any willful and malicious act of the insured." (*Id.* at 13.) Finally, there is no coverage for "personal injury when the insured acts with specific intent to cause any harm." (*Id.*)

## II. The Underlying Action

In October 2019, Carla Wigton filed suit against Murphy in the Montana Fourth Judicial District Court.[2] (Doc. 20-1.) In her complaint ("the Underlying

---

[2] In June 2019, Wigton and Murphy attempted to enter a settlement agreement in federal court based on a previously filed complaint. (Doc. 33 at ¶ 32); *see Wigton v. Murphy*, CV 18–73–M–DWM. This Court held a reasonableness hearing as to the settlement amount and concluded that the requirements for subject matter jurisdiction were not met. (Doc. 31-3 at 2.) Accordingly, the Court denied

4

Complaint"), Wigton alleges that beginning in May 2017, she was a tenant of Lakeview Village Apartments in Polson, which Murphy managed. (*Id.* ¶¶ 3, 7.) She also alleges that she qualified for a reduced rental rate based on her disability and income, but none of the reduced-rent units were available at the time. (*Id.* ¶¶ 11–12.) According to the Underlying Complaint, Murphy knew Wigton could not afford to rent a unit at its normal rate, but he offered Wigton an agreement to rent a standard unit with the understanding that he would help her find "miscellaneous jobs" to cover the excess rent. (*Id.* ¶¶ 14–15.) Wigton signed this agreement. (*Id.* ¶ 15.)

Wigton alleges that on July 1, 2017, Murphy invited her to clean his family's cabin in exchange for her monthly rent. (*Id.* ¶ 20.) Once Wigton arrived at the cabin, Murphy had sexual intercourse with her without her consent. (*Id.* ¶ 21.) According to the Underlying Complaint, Murphy entered Wigton's residence without permission on July 3, 2021, and again had sexual intercourse with her without her consent. (*Id.* ¶ 22.) After the assaults, Murphy apparently apologized to Wigton, requested that she not contact the police, and—when news of the assaults circulated through the Lakeview community—distributed letters to

---

Wigton's motion to approve the stipulation for entry of judgment and dismissed the action without prejudice. (*Id.* at 4.)

Lakeview tenants denying that the assaults happened and insinuating that Wigton was a liar. (*Id.* ¶¶ 23–26.)

Wigton moved out of Lakeview in the middle of July, allegedly due to the hostile environment Murphy created at Lakeview and her continued fear of him. (*Id.* ¶ 27.) Wigton's friends reported the events to the police, and Murphy was eventually cited for sexual intercourse without consent, witness tampering, and negligent endangerment. (*Id.* ¶¶ 29, 34, 37.) Murphy pleaded no contest to the charges, and his employment at Lakeview was terminated. (*Id.* ¶¶ 35, 37.) Wigton sought recovery on claims of assault, battery, negligence, and violation of Montana Fair Housing Law. (*See generally id.*) She sought damages for medical and psychological care, as well as damages for physical pain and suffering, emotional distress, loss of enjoyment of life, punitive damages, and attorney fees and costs. (*Id.* at 9.)

Murphy tendered the claim to State Farm, and State Farm notified him in December 2019 that it would not defend or indemnify him because the alleged acts were outside the scope of coverage under either the Homeowners or Umbrella Policy. (Doc. 20-2 at 1–2.) In its letter disclaiming coverage, regarding the Homeowners Policy, State Farm stated,

> While there is no question the claims being made in the present Complaint are for bodily injury, based on the information presently known and the allegations pled in the current Complaint, there is a question whether Ms. Wigton is seeking damages because of bodily

6

> injury or property damage caused by an occurrence, as these terms are defined within the Homeowners Policy and Endorsement, FE-3485. Specifically, in the sense the definition of occurrence requires, in part, an accident, we do not believe that the damages being alleged were caused by an accident.

(*Id.* at 4.) Additionally, regarding the Umbrella Policy, State Farm noted,

> Inasmuch as a loss includes an accident, including accidental exposure to conditions, which first result in bodily injury or property damage or the commission of an offense which first results in personal injury, based on the information presently known we believe that there are claims being asserted which meet the policy definition of a loss, and therefore the insuring agreement of the [Umbrella Policy] is met.

(*Id.* at 6.) But, despite acknowledging that Wigton's allegations likely satisfied the definition of "loss," State Farm repeated its belief that no coverage existed because of the Umbrella Policy exclusions related to sexual harassment, business loss, intentional or expected bodily harm, and personal injury resulting from the specific intent to harm. (*Id.* at 7–8.) Thus, State Farm declined to defend Murphy in the underlying action, (*see generally id.*), and State Farm did not file a declaratory action, (Doc. 30 at ¶ 13).

In February 2021, Murphy entered into a compromise settlement agreement ("the settlement") with Wigton, ending the defense of the underlying action and avoiding exposure of his personal assets. (*Id.* ¶ 14.) Under the settlement, Murphy agreed to entry of judgment against him in the amount of the combined limits of the Homeowners Policy and Umbrella Policy, and agreed to assign to Wigton all of his contractual and extra-contractual claims and rights of action related to the

underlying action against State Farm. (*Id.* ¶ 15.) The settlement was contingent on court approval. (*Id.* ¶ 16.) Wigton was granted her request for a reasonableness hearing—of which State Farm was given notice, though it did not move to intervene or participate—and Wigton offered numerous exhibits and called multiple witnesses. (*Id.* ¶¶ 17–20.) On April 15, 2021, the district court then entered judgment for Wigton and against Murphy in the amount of $1,100,000 (the combined limit of the Homeowners and Umbrella Policy) for compensatory damages only. (*Id.* ¶ 21; *see also* Doc. 20-3 at 21.)

### III. Procedural Posture

Wigton filed suit against State Farm in state court in July 2020, and State Farm removed the action to federal court. (*See* Doc. 1.) Wigton alleges a breach of contract claim against State Farm, arguing that it had a duty to defend Murphy in the underlying action. (Doc. 1-1 at 7.) Wigton also seeks a declaratory judgment that State Farm breached its duty and thereby waived its coverage defenses, so it is liable for the $1,100,000 judgment entered against Murphy. (*Id.*) Both parties have moved for summary judgment, (Docs. 17, 28), and State Farm has moved for a hearing on the cross-motions for summary judgment, (Doc. 38).

### LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

8

matter of law." Fed. R. Civ. P. 56(a). On cross-motions for summary judgment, it is the court's "independent duty to review each cross-motion and its supporting evidence. . . to determine whether the evidence demonstrates a genuine issue of material fact." *Fair Housing Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1137 (9th Cir. 2001). Each motion is therefore evaluated separately, "giving the nonmoving party in each instance the benefit of all reasonable inferences." *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1150 (9th Cir. 2016). Because this Court is sitting in diversity, Montana's substantive law on contract interpretation applies. *See Ticknor v. Choice Hotels Int'l Inc.*, 265 F.3d 931, 937 (9th Cir. 2001). "In Montana, the interpretation of an insurance contract is a question of law." *Barnard Pipeline, Inc. v. Travelers Prop. Cas. Co. of Am.*, 3 F. Supp. 3d 865, 870 (D. Mont. 2014).

## ANALYSIS

The duty to defend "is independent from and broader than the duty to indemnify created by the same insurance contract." *Tidyman's*, 330 P.3d at 1149 (internal quotation marks omitted). "An insurer must defend unless there exists an unequivocal demonstration that the claim against the insured does not fall under the policy's coverage." *Emplrs. Mut. Cas. Co. v. Estate of Buckles*, 443 P.3d 534, 538 (Mont. 2019) (internal quotation marks omitted). The "threshold question" is therefore "whether the complaint against the insured alleges facts that, if proven,

9

would trigger policy coverage." *Tidyman's*, 330 P.3d at 1150. "When a court compares allegations of liability advanced in a complaint with policy language to determine whether the insurer's obligation to defend was 'triggered,' a court must liberally construe allegations in a complaint so that all doubts about the meaning of the allegations are resolved in favor of finding that the obligation to defend was activated." *Farmers Union Mut. Ins. Cov. v. Staples*, 90 P.3d 381, 385 (Mont. 2004). "Montana follows what is known as the mixed-action rule, which requires an insurer to defend all counts in a complaint so long as one count triggers coverage, even if the remaining counts do not trigger coverage." *Fire Ins. Exch. v. Weitzel*, 371 P.3d 457, 461 (Mont. 2016). But "[i]f there is no coverage under the terms of the policy based on the facts contained in the complaint, there is no duty to defend." *Id.*

Nevertheless, an insurer that refuses to tender a defense based on coverage does so "at its peril" because if its failure is unjustifiable and coverage is found, "the insurer is estopped from denying coverage and becomes liable for defense costs and judgments." *Tidyman's*, 330 P.3d at 1149; *Draggin' Y Cattle Co., Inc. v. Junkermier, Clark, Campanella, Stevens, P.C.*, 439 P.3d 935, 941 (Mont. 2019) ("[A]n insurer that breaches its duty to defend will be bound by its insured's settlement and any resulting judgment so long as the settlement is reasonable and not the produce of collusion.") (internal quotation marks omitted). The Montana

10

Supreme Court has therefore suggested "the prudent court of action is to defend under a reservation of rights and file a declaratory judgment action to discern coverage." *Tidyman's*, 330 P.3d at 1149.

I.  **Homeowners Policy**

State Farm argues that the facts alleged in the complaint, even if proven, do not trigger coverage under the policy because the "bodily injury" suffered by Wigton was not caused by an "occurrence." In response, Wigton argues that the duty to defend was triggered when State Farm recognized that "there is a question whether Ms. Wigton is seeking damages because of bodily injury . . . caused by an occurrence," (Doc. 20-2 at 4). Failing that, Wigton argues the duty was triggered by the allegations of facts that, if proven, would result in coverage. Both arguments are compelling.

As to Wigton's first argument, under *Tidyman's*, an insurer's position on coverage is indicative of whether the absence of coverage is unequivocal. Put differently, if an insurer equivocates on coverage then the purported absence cannot be so unequivocal as to obviate the duty to defend. Here, State Farm recognized a factual dispute existed as to whether the underlying complaint alleged an accident. This is likely sufficient to show the underlying complaint "potentially implicated" coverage. *See Tidyman's*, 330 P.3d at 1150 ("[A]ll that matters is whether [the insured] was on notice that the Policy was potentially implicated.").

11

But even if that is not dispositive, given State Farm's immediate disavowal of coverage, such coverage is implicated by the allegations of the Underlying Complaint.

Under the Homeowners Policy, "occurrence" means accident. (Doc. 20-4 at 36.) To determine whether conduct was accidental rather than intentional, Montana applies a "two-prong objective standard, which first considers whether the act itself was intentional and, if so, then considers whether the consequences or resulting harm stemming from the act was intended or expected form the actor's standpoint." *Farmers Ins. Exch.*, 477 P.3d at 1105. "The second prong requires an objective inquiry to determine what could reasonably be expected to result from an intentional act." *Id.*

Here, State Farm argues that because it was not objectively reasonable for Murphy to believe that Wigton consented to his conduct, the harm she suffered was expected or intended and therefore not covered. To be sure, there are facts that support a finding that the interactions between Murphy and Wigton were not consensual. For example, Murphy apologized to Wigton multiple times after the fact, (Doc. 20-1 at ¶ 23), was criminally charged for his conduct, (*id.* ¶ 30), and offered to pay Wigton $5,000 if she dropped the charges, (*id.* ¶ 31). Nevertheless, there are also pleaded facts that indicate Murphy has consistently taken the position that the relationship, and therefore his conduct, was consensual. For

12

example, in his note offering to pay Wigton $5,000 he "again contended that the sexual encounters with Plaintiff were consensual." (*Id.*) Murphy also pled not guilty to the charges and ultimately pled no contest. (*See id.* ¶¶ 36–37.) These factual allegations, considered in conjunction with the allegation of negligence, are sufficient to raise a dispute as to what a reasonable person in Murphy's position objectively expected. *Compare with Am. Reliable Ins. Co. v. Lockard*, 793 F. App'x 505, 507 (9th Cir. 2019) (concluding after a bench trial that a reasonable person in the insured's position could objectively expect his actions to cause harm to a victim of his sexual assault where the victim "had consumed both alcohol and Ambien"). Construing the underlying complaint to resolve all doubt in favor of finding coverage, *Staples*, 90 P.3d at 385, there was a dispute as to whether there was an "occurrence" as to trigger coverage. Further, the record is devoid of any indication that, after recognizing that "there is a question whether Ms. Wigton is seeking damages because of bodily injury . . . caused by an occurrence," (Doc. 20-2 at 4), State Farm made any effort to investigate the facts giving rise to that question. Montana law prohibits this sort of unilateral decision. *See J&C Moodie Props., LLC v. Deck*, 384 P.3d 466, 473 (Mont. 2016).

Nonetheless, in its denial letter, State Farm further argued that even if the Underlying Complaint alleged an occurrence, coverage is subject to the following policy exclusion:

13

    a. Bodily injury or property damage:
       (1) which is either expected or intended by the insured; or
       (2) which is the result of willful and malicious acts of the insured;
    b. bodily injury or property damage arising out of the business pursuits of any insured or the rental or holding for rental of any part of any premises by any insured.

(Doc. 20-2 at 4.) As a threshold matter, an insurer can rely on policy exclusions in making its duty to defend determination. *See Beaverhead Cty. v. Mont. Ass'n of Ctys. Joint Powers Ins. Auth.*, 335 P.3d 721, 724 (Mont. 2014). Nevertheless, such reliance can be problematic as "exclusions 'are frequently subject to challenge for ambiguity and inconsistency,' and as a result 'the mere existence of the exclusions in [a policy] does not establish an unequivocal determination that the claim does not fall within the insurance policy's coverage.'" *Dowson v. Scottsdale Ins. Co.*, 645 F. App'x 532, 533 (9th Cir. 2016) (quoting *Newman v. Scottsdale Ins. Co.*, 301 P.3d 348, 355 (Mont. 2013)) (alterations omitted). And that is the situation here.

As discussed above, what was "expected or intended" from Murphy's point of view is a fundamental dispute in the underlying action. And while it is undisputed that Murphy was the manager of Wigton's apartment and used that position inappropriately, State Farm's denial letter does not explain how any bodily injury arising out of an assault "ar[ose] out of business pursuits" or the rental business. For example, as argued by Wigton in her summary judgment brief, it is not clear whether State Farm believed the "rental" at issue was the Lakeview unit or the cabin where the first assault occurred. Ultimately, it is not

14

sufficient under the "unequivocal demonstration" standard to simply state exclusionary language. *See Pac. Hide & Fur Depot v. Great Am. Ins. Co.*, 23 F. Supp. 3d 1208, 1225 (D. Mont. 2014) ("To the Court's knowledge, the first time Great American raises notice *in any meaningful way* is in the Answer in this case."). Nor can State Farm ameliorate that shortcoming with additional facts now.

Based on the allegations in the Underlying Complaint, State Farm had a duty to defend under the Homeowners Policy.

## II. Umbrella Policy

Likewise, the facts alleged in the Underlying Complaint were sufficient to trigger a duty to defend under the Umbrella Policy. The Umbrella Policy promises a defense in the event the insured is sued "because of a loss to which this policy applies." (Doc. 30 at ¶ 27.) In its denial of coverage, State Farm admits that "there are claims being asserted which meet the policy definition of a loss, and therefore the insuring agreement of the [Umbrella Policy] is met." (Doc. 20-2 at 6.) As a result, State Farm's denial of coverage is premised entirely on its application of certain policy exclusions it believes "act as a complete bar to coverage."[3] (*Id.*)

---

[3] Note that State Farm reached this conclusion after deciding that the Underlying Complaint did not allege an "occurrence." As a result, even if the Court's analysis on that issue is incorrect, "loss" under the Umbrella Policy is broader and would independently implicate coverage.

15

As a preliminary matter, State Farm's reliance on policy exclusions in this context suffers from the same fundamental deficiency as that invoked under the Homeowners Policy: it is not enough to simply state the exclusionary language and imply that it applies to the fact here. *See Newman*, 301 P.3d at 355. But even considering the exclusions under the alleged facts, they do not foreclose coverage.

State Farm invoked four exclusions. First, there is an exclusion for "loss arising out of the alleged or actual (a) sexual harassment; (b) sexual molestation; or (c) discrimination prohibited by law." (Doc. 20-5 at 11.) Second, there is an exclusion for "loss arising out of any insured's business property or business pursuits." (*Id.*) Third, there is an exclusion for "bodily injury or property damage which is (a) either expected or intended by the insured; or (b) the result of any willful and malicious act of the insured." (*Id.* at 13.) And finally, there is an exclusion for "personal injury when the insured acts with the specific intent to cause harm." (*Id.*) The last three exclusions do not foreclose coverage here for the same reasons discussed above in the context of the Homeowners Policy—namely, there is a dispute as to whether the alleged conduct was consensual and whether it related to some sort of business pursuit or rental. And, again, the record is devoid of any evidence suggesting that State Farm actually investigated that dispute, and instead it appears State Farm made unilateral conclusions to the detriment of its insured. A carrier is free to flesh out coverage issues by defending under a

16

reservation of rights and seeking a declaratory judgment, but the carrier does not get to arbitrarily decide facts relating to coverage when the broader duty to defend is implicated. To hold otherwise would render the duty to defend meaningless.

In the context of the first exclusion, Wigton alleges that Murphy came into her apartment without her permission and harassed her both psychologically and physically before, during, and after the alleged sexual assaults. (*See* Doc. 20-1 at ¶ 40.) These allegations could potentially implicate coverage under the definition of loss because Wigton asserts Murphy's actions resulted in "personal injury," which encompasses injury "other than bodily injury." (Doc. 20-5 at 6.) Consequently, to the extent Wigton claims she suffered emotional distress, mental anguish, mental distress, or mental injury, she alleges "personal injury" as a result of Murphy's invasion of her home. (*Compare id.* ¶ 2(c) (excluding mental injury from the definition of bodily injury) *with id.* at 7, ¶ 8(d) (defining "personal injury" to include injury that is not bodily injury but is caused by invasion of another person's right of private occupancy).) Therefore, in addition to the fact that State Farm's statement regarding the first exclusion is conclusory, it is also unsupported by the allegations in the Underlying Complaint.

As a result, State Farm had a duty to defend under the Umbrella Policy.

## CONCLUSION

17

State Farm abandoned its insured in contravention of its contractual promise to defend, even if such defense was tendered under a reservation of rights. Where the duty to defend is triggered, the carrier must defend until relieved of that duty by court determination in a legal proceeding. It is a rare proceeding indeed where that duty is not implicated. *See Emps. Mut. Cas. Co. v. Est. of Buckles*, 443 P.3d 534, 541 (holding insurer owed no duty to defend based on the unequivocal demonstration that the policy did not cover the party seeking coverage as an "insured"). Under Montana law, State Farm took the risk of disclaiming a duty to defend at its peril. As this Court has recognized, "[t]here is always a risk in making unilateral coverage decisions," *RQR Dev., LLC v. Atl. Cas. Ins. Co.*, 2014 WL 6997935, at *4 n.1 (D. Mont. Dec. 10, 2014), and in this case State Farm's gamble results in its liability for the $1,100,000 state court judgment. Accordingly,

IT IS ORDERED that Wigton's motion for summary judgment, (Doc. 17), is GRANTED and State Farm's motion, (Doc. 28), is DENIED. The September 13, 2021 bench trial and related deadlines are VACATED.

IT IS FURTHER ORDERED that State Farm's motion for oral argument, (Doc. 38), is DENIED as MOOT.

IT IS FURTHER ORDERED the Clerk is directed to enter judgment in favor of Wigton in the amount of $1,100,000.00. The judgment shall also award:

(1) prejudgment interest from April 15, 2020 to the date of this Order at the Montana rate, Mont. Code Ann. § 25–9–205(1); and (2) post-judgment interest from the day after this Order until paid at the federal rate, 28 U.S.C. § 1961.

IT IS FURTHER ORDERED that Wigton is instructed to file a motion for attorney fees and costs consistent with Federal Rule of Civil Procedure 54(d)(2).

DATED this 29th day of July, 2021.

_____ 14;19.P.M.
Donald W. Molloy, District Judge
United States District Court